UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER W. BRODERICK, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 11-10047-JLT |
| | * |
| PNC MORTGAGE CORPORATION, | * |
| | * |
| Defendant. | * |

Memorandum

March 20, 2013

TAURO, J.

I.   Introduction

Plaintiff Jennifer Broderick ("Broderick") brings this suit against Defendant PNC Mortgage Corporation ("PNC") arising out of her home mortgage loan. Broderick claims that National City Mortgage ("NCM") engaged in predatory lending when it originated her mortgage loan, and that PNC is liable as NCM's successor in interest. PNC moved for summary judgment on all counts. For the reasons set forth below, PNC's Motion for Summary Judgment [#15] is ALLOWED as to Counts II, III, and IV, and DENIED as to Count I. Additionally, this court grants Broderick leave to amend her complaint to bring a claim for negligent misrepresentation.

II.   Factual Background[1]

In 2007, Jennifer Broderick and her fiancé, Steven Midgley, contacted NCM to apply for a mortgage loan to finance the purchase of, and construction of a dwelling on, property located at

---

[1] The court presents facts contained in the record in the light most favorable to Plaintiff.

17 Country Road, Attleboro, Massachusetts.[2] Broderick claims that Midgley, in addition to being her fiancé, was also a licensed attorney and represented her in connection with the mortgage loan transaction in question.[3]

Broderick and Midgley worked with NCM representative John Savastano. Both Broderick and Midgley sent Savastano their financial information.[4] In particular, Broderick submitted her 2006 W-2 tax forms, listing her annual income as approximately $26,000.[5]

The first time Broderick spoke with Savastano, she informed him that she was adamant about not being on the mortgage alone.[6] In response, Savastano assured Broderick that she had nothing to worry about because Midgley would "sign off on all the financial documents."[7] From this representation, Broderick believed that the mortgage application was joint and that Midgley would be liable on the note and mortgage.[8]

Broderick then completed an internet application for a mortgage loan with NCM. While completing this application, Broderick spoke with Savastano over the phone and he walked her through the application.[9] At Savastano's direction, Broderick filled in certain "basic information,"

---

[2] Pl.'s St. of Mat. Facts ¶ 1 [#19]; Broderick Dep. 26:5-31:7 (Def.'s Ex. A) [#18-1].

[3] Def.'s St. of Mat. Facts ¶ 15 [#17]; Broderick Dep. 30:3-10.

[4] Broderick Aff. ¶ 1 (Pl.'s Ex. S) [#19-1]; Midgley Dep. 17:18-19 (Def.'s Ex. B) [#18-2].

[5] Broderick Aff. ¶ 1; Pl.'s Ex. V [#19-4].

[6] Broderick Dep. 81:10-13, 82:16-17, 85:8-12.

[7] Broderick Dep. 83:16-22, 88:11-17, 115:2-4, 115:19-22.

[8] Broderick Dep. 84:4-9, 88:11-17; 101:2-4, 118:7-8.

[9] Broderick Aff. ¶ 2; Broderick Dep. 89:23-90:24.

such as her social security number, age, and address.[10] Broderick denies filling in the "borrower's income" figure on the application.[11]

On December 3, 2007, Savastano faxed Midgley a number of documents for Broderick to sign. This packet of documents included a Truth-in-Lending Disclosure Statement and a mortgage loan application.[12] Broderick signed these documents without reading them.[13] Unknown to Broderick, the application listed her as the sole borrower.[14] The application also listed the borrower's "monthly income" as $6,200 on the first page and $7,000 on the second page.[15] Broderick denies filling in the false income figures.[16] Midgley faxed these documents back to NCM on December 4, 2007.[17]

On January 14, 2008, Broderick and Midgley attended the closing for the Country Road property. At the closing, Broderick again signed a number of documents without reading them,[18] including a Truth-in-Lending Disclosure Statement, mortgage, note, and loan application.[19] The

---

[10] Broderick Aff. ¶ 2; Broderick Dep. 89:20-90:1, 90:12-20.

[11] Broderick Aff. ¶ 2; Broderick Dep. 90:2-8.

[12] Def.'s Ex. R [#18-18]. .

[13] Broderick Dep. 77:2-11, 86:18-88:1, 98:18-99:9, 123:23-124:9, 125:7-13, 127:9-16.

[14] Def.'s Ex. R.

[15] Def.'s Ex. R.

[16] Broderick Aff. ¶ 2; Broderick Dep. 90:2-8, 124:3-9.

[17] Def.'s Ex. R; Def.'s St. of Mat. Facts ¶ 55.

[18] Broderick Aff. ¶ 3; Broderick Dep. 143:20-144:12.

[19] Broderick Dep. 144:2-22, 147:8-10; Def.'s Exs. K [#18-11], L [#18-12], M [#18-13], N [#18-14].

loan application was for a "no income verification" loan for $408,500, at a 6.375% interest rate.[20] The Truth-in-Lending Disclosure Statement listed the starting monthly loan payments as $2,814.04.[21] The loan application listed the borrower's income as $6,200 on the first page and $7,000 on the second page.[22] The documents also listed Broderick as the sole borrower.[23] Broderick signed these documents still believing that the mortgage was joint, based on Savastano's earlier assurances.[24]

In 2009, Midgley filed for divorce. Broderick claims that during divorce proceedings she learned that she was the sole borrower listed on the loan documents.[25] Broderick was unable to afford the monthly loan payments on her own and defaulted.[26] As a result, she lost $28,000 for her down payment and closing costs, and approximately $100,000 spent on improvements to the property.[27] Broderick also suffered emotional distress.[28]

On January 9, 2011, Broderick filed a complaint against PNC. Broderick brings four counts, including: (1) unjust enrichment, (2) equitable relief, (3) negligence/ Massachusetts

---

[20] Def.'s Ex. M.

[21] Def.'s Ex. N.

[22] Def.'s Ex. M.

[23] Def.'s Exs. K, L, M, N.

[24] Broderick Dep. 143:20-144:1.

[25] Broderick Aff. ¶ 4.

[26] Broderick Aff. ¶ 4.

[27] Broderick Aff. ¶ 4.

[28] Broderick Aff. ¶ 4.

Consumer Credit Cost Disclosure Act ("MCCCDA"), and (4) negligence/ Truth in Lending Act ("TILA"). Broderick's theories of liability appear to be that NCM wrongfully (1) inserted the false income figure into her loan application, (2) misled her into believing that the loan application was joint, and (3) knowingly originated a home mortgage loan that was "doomed to default."[29] On April 13, 2012, PNC moved for summary judgment as to all counts.

III. Discussion

    A.    Legal Standard

To prevail on a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[30] A factual dispute is "genuine" if a reasonable jury could resolve the issue in favor of the nonmoving party.[31] In deciding summary judgment, a court must view the record "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party."[32]

    B.    Count I: Unjust Enrichment

PNC moves for summary judgment as to Broderick's unjust enrichment claim on two grounds. First, PNC argues that the benefit PNC received under the mortgage contracts was not unjust. "Unjust enrichment is defined as 'retention of money or property of another against

---

[29] Compl. ¶ 8 [#1]; Pl.'s Opp'n to Summ. J. 3, 5, 7-8 [#20].

[30] Fed. R. Civ. P. 56(a).

[31] United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

[32] De La Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000).

fundamental principles of justice or equity and good conscience.'"[33] To recover for unjust enrichment under Massachusetts law, a plaintiff must show that (1) the defendant knowingly received a benefit (2) at plaintiff's expense (3) under circumstances that would make retention of the benefit unjust.[34] Generally, a signatory is bound by the contents of a document he or she signs, regardless of whether or not he or she read the document.[35] Massachusetts, however, "is often more forgiving at least where deliberate fraud by the other side confronts mere negligence by the signer."[36]

Here, there is a triable issue as to whether PNC's financial benefit from the mortgage contract was unjust. Broderick testified at her deposition that she signed the mortgage documents without reading them in reliance on Savastano's false assurances that Midgley would also be liable on the mortgage. Broderick further testified that she did not fill in the false income figure on the loan application. The Truth-in-Lending Disclosure Statement, taken together with Broderick's 2006 W-2 forms, provide evidence that NCM knowingly extended a home mortgage loan to Broderick with payments constituting approximately 130% of her monthly income.[37] Based on this evidence, there are genuine disputes of material fact as to whether (1) NCM falsified the loan

---

[33] Santagate v. Tower, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005) (quoting Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co., 534 F.Supp. 340, 347 (D. Mass. 1982)).

[34] Frappier v. Countrywide Home Loans, Inc., 645 F.3d 51, 58 (1st Cir. 2011) (citing Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009)).

[35] Id. at 57.

[36] Id.

[37] Def.'s Ex. N; Pl.'s Ex. V. Broderick also testified that she provided her W-2 to NCM.

6

application by inserting a false income figure, (2) Savastano misrepresented to Broderick that the mortgage was joint, and (3) NCM originated a home mortgage loan that it knew Broderick could not repay.[38] As a result, summary judgment is not appropriate.

Second, PNC argues that the existence of an express mortgage contract precludes Broderick's claim for unjust enrichment. It is true that a valid contract can preclude recovery for unjust enrichment.[39] This is because the law will not imply a contract where there is already an enforceable contract covering the subject matter.[40] An express contract, however, does not bar an action for unjust enrichment if the contract is invalid or otherwise unenforceable by reason of fraud, misrepresentation, mistake, illegality, indefiniteness, incapacity, etc.[41] A plaintiff may be entitled to restitution under an unjust enrichment theory to recover for benefits conferred pursuant to an unenforceable contract. Here, Broderick has provided sufficient evidence from which a

---

[38] See Frappier, 645 F.3d at 57-58.

[39] See Zarum v. Brass Mill Materials Corp., 134 N.E.2d 141, 143 (Mass. 1956); Restatement (Third) of Restitution & Unjust Enrichment § 2(2) (2011) ("A valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment.").

[40] See Zarum, 134 N.E.2d at 143.

[41] Restatement (Third) of Restitution & Unjust Enrichment § 2 cmt. c ("Judicial statements to the effect that 'there can be no unjust enrichment in contract cases' can be misleading if taken casually. Restitution claims of great practical significance arise in a contractual context, but they occur at the margins, where a valuable performance has been rendered under a contract that is invalid, or subject to avoidance, or otherwise ineffective to regulate the parties' obligations."), § 31 cmt. a ("Performance under an agreement that is unenforceable by reason of fraud, duress, or undue influence yields a claim in restitution that is described accordingly – whether or not the transaction between the parties ever assumed a contractual form."); see also Keller v. O'Brien, 683 N.E.2d 1026, 1030 (Mass. 1997) ("We have, for example, awarded restitution in those cases where a party has been unjustly enriched because of some breach of duty, a violation of trust, bad faith, or fraud.") (citing cases).

reasonable fact-finder could conclude that her mortgage contract is unenforceable on grounds such as material misrepresentation or fraudulent inducement.[42] Accordingly, the express mortgage contract does not preclude Broderick's unjust enrichment claim at this stage. PNC's motion for summary judgment is denied as to Count I.

### C.   Count II: Equitable Relief

PNC's motion for summary judgment is allowed as to Count II because Broderick does not state a cause of action in this count. Rather, Broderick merely lists the equitable remedies she is seeking.[43] As a result, this court will construe Count II as part of Broderick's prayer for relief, and not as a separate count. Broderick may still be eligible to recover these forms of equitable relief for the causes of action stated in other counts of her complaint.

### D.   Count III & IV: Negligence/TILA/MCCCDA

In Counts III and IV, Broderick brings claims for violation of TILA (15 U.S.C. §§ 1601 *et seq*.), violation of MCCCDA (Mass. Gen. Laws ch. 140D), and common law negligence.

####   i.   TILA

TILA requires creditors to clearly and accurately disclose certain "material" terms to

---

[42] See Restatement (Third) of Restitution & Unjust Enrichment § 13(1) ("A transfer induced by fraud or material misrepresentation is subject to rescission and restitution. The transferee is liable in restitution as necessary to avoid unjust enrichment."), § 13 cmt. a ("Fraud is one of the principal grounds for restitution and one of the principal sources of unjust enrichment.").

[43] See e.g., Keller, 683 N.E.2d at 1029 ("Restitution is an equitable remedy by which a person who has been unjustly enriched at the expense of another is required to pay the injured party."); Augustine v. Rogers, 710 N.E.2d 1030, 1032-33 (Mass. App. Ct. 1999) ("In any case, rescission is an equitable remedy awarded at the discretion of the court.").

debtors in consumer credit transactions.[44] "Material disclosures" include the annual percentage rate, the finance charge, the amount to be financed, the total number and amount of payments, and the payment schedule.[45] TILA provides a number of remedies for a creditor's failure to make "material disclosures" in the form of criminal penalties, civil damages, and rescission.[46]

Broderick's TILA claim fails for three reasons. First, Broderick has not identified what, if any, disclosures NCM failed to make or how the disclosures that NCM made were inadequate. Nor has Broderick responded to PNC's arguments in favor of summary judgment on this claim.[47]

Second, Broderick has not offered evidence of any TILA violation. PNC has provided copies of two documents entitled "Truth-in-Lending Disclosure Statement," dated December 3, 2007, and January 14, 2008.[48] Both of these Disclosure Statements contain information on the annual percentage rate, finance charge, amount financed, total payments, and payment schedule. Both of these documents also bear Broderick's signature.[49] Broderick admits that she signed these documents without reading them.[50] Broderick does not allege any particular deficiencies in these Disclosure Statements. NCM's failure to point out that the loan application overstated her

---

[44] See McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 421 (1st Cir. 2007) (citing Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998)).

[45] See 15 U.S.C. § 1602(v); Beach, 523 U.S. at 412.

[46] 15 U.S.C. §§ 1611, 1640, 1635.

[47] Additionally, at the hearing on PNC's motion, Broderick conceded this claim.

[48] Def.'s Exs. R, N.

[49] At her deposition, Broderick identified her signatures on these documents. Broderick Dep. 77:2-11, 127:10-16, 144:2-12.

[50] Broderick Dep. 86:18-88:1, 123:23-124:9, 125:7-13, 143:20-144:1.

income is not a failure to make a "material disclosure" under TILA.[51] Broderick's claim that she did not read the disclosures also does not give rise to a cause of action under TILA.[52] In light of this evidence, Broderick's unsupported allegation that she did not receive TILA disclosures is insufficient to survive summary judgment.

Third, even if Broderick had provided evidence of a TILA violation, she would still not be entitled to relief. The remedy of rescission is unavailable because Broderick's mortgage loan was a "residential mortgage transaction" under 15 U.S.C. § 1635(e) and § 1602(x).[53] Damages are also unavailable because Broderick failed to file this action within the one year statute of limitations for TILA damage actions under 15 U.S.C. § 1640(e).[54]

    ii.    MCCCDA

The Massachusetts legislature modeled MCCCDA after TILA.[55] MCCCDA "mirrors

---

[51] See Kassner v. Chase Home Fin., LLC, No. 11-10643-RWZ, 2012 WL 260392, at *3 (D. Mass. Jan. 27, 2012) (citing Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998)).

[52] Melfi v. WMC Mortg. Corp., 568 F.3d 309, 312 (1st Cir. 2009) ("Our test is whether any reasonable person, in reading the form in this case, would so understand it.").

[53] 15 U.S.C. § 1635(e) (exempting "residential mortgage transactions" from the remedy of rescission); 15 U.S.C. § 1602(x) ("The term 'residential mortgage transaction' means a transaction in which a mortgage . . . is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling.").

[54] 15 U.S.C. § 1640(e); Rodrigues v. Members Mortg. Co., Inc., 323 F. Supp. 2d 202, 210 (D. Mass. 2004) (citing Smith v. Fid. Consumer Disc. Co., 898 F.2d 896, 903 (3d Cir. 1990); Rudisell v. Fifth Third Bank, 622 F.2d 243, 246 (6th Cir. 1980)). Broderick does not raise, and therefore the court need not address, tolling.

[55] McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 422 (1st Cir. 2007) (citing Lynch v. Signal Fin. Co., 327 N.E.2d 732, 734 (Mass. 1975)).

TILA in nearly all material respects,"[56] and the disclosure requirements of both acts are "essentially the same."[57] As a result, MCCCDA and TILA "generally do not require separate analysis."[58] As discussed above, Broderick has not provided sufficient evidence of a disclosure violation under either TILA or MCCCDA to survive summary judgment. Accordingly, summary judgment is allowed as to Broderick's MCCCDA claim.[59]

      iii.    Negligence

Summary judgment is allowed as to Broderick's negligence claim for two reasons. First, Broderick's claim is barred by the economic loss doctrine. The economic loss doctrine bars recovery for purely economic losses in negligence actions absent personal injury or property damage.[60] Broderick seeks damages for economic loss but has not offered any evidence of personal injury or property damage.

Second, Broderick's negligence claim fails because Broderick has not offered evidence

---

[56] Kassner, 2012 WL 260392, at *3; McKenna, 475 F.3d at 422 ("Except for a modest variance in regard to the limitations period . . . MCCCDA mirrors its federal counterpart.").

[57] Rodrigues, 323 F. Supp. 2d at 210.

[58] Id.; McKenna, 475 F.3d at 422 ("It is, therefore, common ground that the MCCCDA should be construed in accordance with TILA.").

[59] One material difference between TILA and MCCCDA is that TILA provides a one year statute of limitations for damage actions and MCCCDA provides a four year statute of limitations for such actions. 15 U.S.C. § 1640(e); Mass. Gen. Laws ch. 260, § 5A. Here, regardless of the statute of limitations, Broderick is not entitled to relief under MCCCDA because Broderick has not provided evidence of a disclosure violation.

[60] FMR Corp. v. Boston Edison Co., 613 N.E.2d 902, 903 (Mass. 1993) (citing cases); Wyman v. Ayer Props., LLC, 979 N.E.2d 782, 787-88 (Mass. App. Ct. 2012).

that NCM owed Broderick a duty of care. Duty is an essential element of a negligence claim.[61] Under Massachusetts law, lenders do not owe borrowers any general duty of care.[62] The facts that Broderick trusted Savastano and that Savastano assured Broderick that she had "nothing to worry about" are insufficient to give rise to such a duty.[63] As a result, Broderick's claim for ordinary negligence fails.

### iv. Negligent Misrepresentation

In her opposition to summary judgment, Broderick argues that summary judgment is not warranted because Count III is properly construed as a claim for negligent misrepresentation, rather than ordinary negligence. Broderick further argues that negligent misrepresentation is an exception to the economic loss doctrine.[64]

Broderick's opposition raises the question of whether her complaint brings a claim for negligent misrepresentation in the first place. The fact that Count III is entitled "Negligence" rather than "Negligent Misrepresentation" is not determinative.[65] It is the substance, rather than the form, of Broderick's allegations that determines the nature of her claim. Broderick's

---

[61] Frappier v. Countrywide Home Loans, Inc., 645 F.3d 51, 58-59 (1st Cir. 2011).

[62] See id. at 59 (citing cases).

[63] Id. Broderick points to Commonwealth v. Fremont Inv. & Loan, 897 N.E.2d 548 (Mass. 2008), TILA, and MCCCDA as establishing NCM's duty of care. Yet, in Frappier, the First Circuit clarified that Fremont did not establish a lender's duty of care in negligence actions. Frappier, 645 F.3d at 59. And, as discussed above, Broderick has not offered evidence of either a TILA or MCCCDA violation.

[64] See Nota Const. Corp. v. Keyes Assoc., 694 N.E.2d 401, 405 (Mass. App. Ct. 1998) (citing Craig v. Everett M. Brooks Co., 222 N.E.2d 752, 754-55 (Mass. 1967)).

[65] Fernandes v. Havkin, 731 F. Supp. 2d 103, 121 n.12 (D. Mass. 2010) (citing cases).

complaint, however, does not identify any particular false statement by an NCM agent upon which Broderick reasonably relied.[66]  As a result, the complaint, as it stands today, does not properly state a claim for negligent misrepresentation.  This pleading deficiency is not a mere technicality but raises concerns over whether PNC was on notice of the nature of the claim it was defending.  PNC's motion for summary judgment reflects that it did not construe Count III as a claim for negligent misrepresentation.

Federal Rule of Civil Procedure 15(a)(2) provides that a "court should freely give leave [to amend a complaint] when justice so requires."  Because Broderick has clarified that her intention was to bring a claim for negligent misrepresentation and because she has provided evidence that a misrepresentation may have taken place,[67] the court grants Broderick leave to amend her complaint so as to properly bring a claim for negligent misrepresentation.

V.   Conclusion

For the above-stated reasons, PNC's Motion for Summary Judgment [#15] is ALLOWED as to Counts II, III, and IV, and DENIED as to Count I.  This court also grants Broderick thirty days to amend her complaint in order to bring a claim for negligent misrepresentation.

AN ORDER HAS ISSUED.

    /s/ Joseph L. Tauro    
United States District Judge

---

[66] See Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 918 N.E.2d 36, 47-48 (Mass. 2009) (reciting the elements of negligent misrepresentation).

[67] Since filing her complaint, Broderick has offered evidence that Savastano falsely represented to her that Midgley would also be liable for the loan and that she relied on this false representation in signing the mortgage documents.  Broderick Dep. 83:16-22, 88:11-17, 115:2-4, 115:19-22, 143:20-144:1.