UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JENNIFER W. BRODERICK,<br><br>   Plaintiff,<br><br>v.<br><br>PNC MORTGAGE CORPORATION,<br><br>   Defendant. | CIVIL ACTION<br>NO. 11-10047-JLT |

YOUNG, D.J.                                       December 30, 2013

MEMORANDUM AND ORDER

**I. INTRODUCTION**

  Jennifer Broderick ("Broderick") brought this suit against PNC Mortgage Corporation ("PNC"), successor-in-interest by merger to National City Mortgage Corporation ("NCM"), claiming that PNC engaged in predatory lending and negligent misrepresentation when it originated her home mortgage loan. Am. Compl., ECF No. 32.

  This case was scheduled for hearing on November 26, 2013 but the parties waived oral arguments and requested this Court to rule on the papers. Elec. Order, November 22, 2013, ECF No. 44. Therefore, the Court hereby issues this order addressing

PNC's motion to dismiss Broderick's negligent misrepresentation claim.

## II. ANALYSIS

### A. Alleged Facts

On or about November 28, 2007, Broderick and her husband at the time, Steven Midgley ("Midgley"), contacted NCM to apply for a purchase money loan to finance the purchase and construction of a dwelling. Am. compl. ¶ 5. During the application and closing process, Broderick and Midgley worked with John Savastano ("Savastano"), a PNC representative. Id. ¶ 6. During the initial verbal and written conversations for the loan application, they told Savastano that this would be a joint application by both Broderick and Midgley for a loan amount of $408,500, based on their joint monthly income of $7,000. Id. ¶ 5. The records of this conversation were apparently lost. Id. Thereafter, Broderick submitted her 2006 W-2 tax forms, listing her annual income as approximately $26,000 and completed an online application form, following the instructions Savastano gave her while they were speaking on the phone. Id. ¶ 7. When filling the "borrower's income" figure on the online application, she told him that only the household income of both Midgley and herself totaled $7,000 and for that reason, she expected that both she and Midgley would be liable for the loan. Id. Apparently unknown to her but not to Savastano, she was

filling out a "no-income verification" loan application. Id. Also unknown to her, Savastano and other employees at PNC removed Midgley's name from the application but did not modify the $7,000 gross income figure on which the loan was based, leaving Broderick as the only applicant with a $7,000 income. Id. At the closing date, Broderick appeared completely ignorant of these changes and signed the pile of documents, including a Truth-in-Lending Disclosure Statement, mortgage, note, and loan application, without reading or reviewing them. Id. ¶ 14. Broderick argues that she signed these documents relying on Savastano's earlier assurances that she and Midgley were going to be jointly liable on the mortgage, and that it was based on a household income of $7,000. Id. ¶ 8. A year later, her husband filed for divorce. Id. ¶ 15. She then learned that she was the only debtor on the loan documents and that Midgley had not been listed as a borrower or debtor on the note or mortgage. Id. Broderick was unable to afford the monthly loan payments on her own and eventually defaulted. Id.

### B. Broderick Pleads Sufficient Facts to Survive a Motion to Dismiss her Negligent Misrepresentation Claim

Broderick claims that PNC negligently misrepresented that she and her husband would jointly be liable for the loan and that it was based on the household total income of $7,000. PNC allegedly induced her to sign the documents without disclosing

that she was relying on inaccurate facts. PNC moved to dismiss stating that the facts, as pled, are insufficient to conclude that it provided Broderick with false information or that she justifiably relied on such false information.

Having had the opportunity to review Broderick's complaint, PNC's motion to dismiss, Broderick's response to the motion to dismiss, and all other relevant documents, this Court hereby DENIES PNC's motion to dismiss in its entirety.

Under Massachusetts law, liability for negligent misrepresentation may lie where the defendant "(1) in the ordinary course of business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) that it failed to exercise reasonable care or competence in obtaining or communicating the information." Fox v. F & J Gattozzi Corp., 41 Mass. App. Ct. 581, 587-88 (1996) (citing Restatement (Second) of Torts § 552(1) (1977)).

Relevant to this motion, the second element, false information, requires that parties to a transaction speak honestly when giving information and divulge all material facts within their knowledge. See Briggs v. Carol Cars, Inc., 407 Mass. 391, 396 (1990). Failure to disclose is actionable as negligent misrepresentation when there is a duty to disclose.

See Golber v. BayBank Valley Trust Co., 46 Mass. App. Ct. 256, 258-59 (1999). Such a duty arises when a party knows the other party to the transaction is not aware of certain material facts, and would reasonably expect them to be disclosed. See Nota Construction Corp. v. Keyes Associates, Inc., 45 Mass. App. Ct. 15, 18-19 (1998) (citing Restatement (Second) of Torts § 551 (1977)).

Generally, once a party expresses concern about a special aspect of an agreement and the importance of it to her, the other party is not at liberty to provide misleading information. See Golber, 46 Mass. App. Ct. at 260. Indeed, a person has a duty to exercise reasonable care when making representations upon which he knows the recipient will be relying. See Kannavos v. Annino, 356 Mass. 42, 48 (1969).

Courts have expressed a strong preference that in the context of negligent misrepresentation claims, the element of reliance should be determined by a jury. See First Marblehead Corp. v. House, 473 F.3d 1, 11 (1st Cir. 2006). Here, a reasonable jury could find that PNC's failure to provide Broderick complete information about the mortgage terms when she was applying online or at the closing day, and which significantly differed from the terms that had been orally discussed, constituted negligent misrepresentation. See First Marblehead Corp., 473 F.3d at 9.

PNC alleges that Broderick signed the loan documents and is therefore bound by their terms, regardless whether she read the agreement or not. Broderick, however, has sufficiently pled that she signed the documents relying on the oral misrepresentations that PNC made to her. See, e.g., Thelemaque v. Fremont Investment & Loan Corp., No. 2008-5179, 2011 WL 2734490 at *8 (Mass. Super. Mar. 23, 2011) (Lauriat, J.); Frappier v. Countrywide Home Loans, Inc., 645 F.3d 51, 57 (1st Cir. 2011).

### III. CONCLUSION

For the foregoing reasons, this Court DENIES PNC's motion to dismiss Broderick's negligent misrepresentation claim.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE